Bobby MATTHEWS, Plaintiff-Appellee, Cross Appellant,

v.

OHIO BARGE LINE, INC., Defendant-Appellant, Cross Appellee.

No. 82–3311.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1984.

Rehearing Denied Nov. 23, 1984.

---

Burke & Mayer, Joseph P. Tynan, New Orleans, La., for defendant-appellant, cross appellee.

Silvestri & Massicot, John Paul Massicot, Frank A. Silvestri, New Orleans, La., for plaintiff-appellee, cross appellant.

Before REAVLEY, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Alleging Jones Act negligence and unseaworthiness, plaintiff Matthews sued his employer Ohio Barge Line, a shipowner, for injuries sustained when plaintiff fell from a chair aboard the M/V STEEL COURIER. The jury returned a general verdict in favor of plaintiff and found that he was entitled to past maintenance and

cure.[1] Defendant Ohio Barge Line appeals the judgment for plaintiff, claiming that the district court erred in (1) refusing to instruct the jury that plaintiff could not recover for an injury caused solely by his failure to properly perform his duties, (2) refusing to direct a verdict in favor of defendant on plaintiff's unseaworthiness claim, (3) using a general verdict form, (4) excluding evidence relating to a former lawsuit filed by plaintiff, and (5) allowing the jury to return alternative verdict figures dependent on the outcome of *Culver II.* Finding no error, we affirm the judgment of the district court. We vacate and remand solely on the issue of damages.

Plaintiff began his assignment as Chief Engineer of the M/V STEEL COURIER in the afternoon on February 8, 1978. This was the first time plaintiff had served aboard the STEEL COURIER. On February 8 when plaintiff reported for duty, he inspected the engine room. He walked around the engine room, checked the engine and oil, and went into the galley to read the last ten days of the log book.[2] He found everything satisfactory. At this time plaintiff did not enter the control room or console room, a small compartment located aft in the engine room between the engines. The control room had a steel deck and housed a control panel and a desk with a steel-legged chair between the two. Plaintiff testified that at this time he had no reason to enter the engine control room because the log book, containing all the paperwork, was not in the control room but in the galley. The record contains no testimony on the part of defendant that plaintiff had a specific duty or responsibility to inspect the control room at the time of his initial inspection on February 8.

After getting up the next day, that is, on the morning of February 9, plaintiff went back to the galley, picked up the log book and went to the control room. He apparently took no action in the control room other than taking the log book in one hand and sitting down. As he grabbed the desk with one hand and leaned back in the chair, the chair "snapped over" with him; he fell over backwards, striking his head and back on the steel bulkhead.

At trial, plaintiff based his Jones Act and unseaworthiness claims on the absence of a rubber mat underneath the steel-legged chair. Plaintiff testified that every other vessel owned and operated by defendant upon which plaintiff had served had a rubber mat underneath the chair in the control room. Both plaintiff's and defendant's testimony indicated that the chief engineer is responsible for ordering equipment to supply the engine room. The captain of the STEEL COURIER testified that orders for small items, such as rubber mats, are called in by the captain to a boat store; the boat store then delivers the item to the vessel.

■ On appeal defendant argues that the court erred by failing to instruct the jury that plaintiff could not recover for an injury caused solely by plaintiff's own failure to properly perform his duties, to wit, plaintiff's failure to inspect the control room on February 8 and his failure to order a rubber mat. Specifically, defendant requested that the court give the following instruction: "If the vessel on which plaintiff was injured was unseaworthy or unsafe for the purpose of plaintiff's duties solely because of his own negligence or because he failed properly to perform his duties as chief engineer, he is not entitled to recover damages from defendant for the unseaworthiness of the vessel." Instead of giving plaintiff's proposed instruction, the district court gave a standard contributory

---

**1.** If the jury found that plaintiff was owed maintenance and cure, the amount owed was stipulated by the parties to be $10,000.

**2.** Among plaintiff's responsibilities during his tenure as chief engineer aboard the vessel were to check on the fire equipment, keep the pumps in working order, keep the engines running, change power packs if necessary, keep the hydraulic systems and steering gears in good working order, and take care of general preventive maintenance.

negligence instruction.[3] Defendant urges that *Kendrick v. Illinois Central Gulf Railroad Co.*, 669 F.2d 341 (5th Cir.1982) mandates that the district court give a charge concerning the employee's duty in addition to the standard contributory negligence instruction. There is no evidentiary basis in the instant case for the type of charge we approved in *Kendrick*. The charge concerning the employee's failure to properly perform his own duties is applicable only in a case where the jury could properly find that the injury was due solely to plaintiff's failure to carry out his duty to his employer. In the instant case the evidence does not support a finding that plaintiff was the sole cause of his accident. Under the facts of this case any unseaworthy condition which existed due to the absence of a rubber mat could not have been due solely to a failure on plaintiff's part to perform the responsibilities which were assigned to him. Plaintiff here could not have corrected the allegedly unseaworthy condition (chair with steel legs resting on bare steel deck) in the short period of time available. The record is devoid of any testimony on the part of defendant that plaintiff had a duty to inspect the engine control room when he reported for duty on February 8. Plaintiff certainly had no responsibility to order any missing supplies until they were known to be needed or missing. The district court properly refused to give defendant's requested instruction as an additional instruction to the standard contributory negligence charge.

 Secondly, defendant contends that there was insufficient evidence of proximate cause in the unseaworthiness claim and that the district court erred in not granting defendant's motion for directed verdict on that claim. The *Boeing* standard of review is appropriate for unseaworthiness claims. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 359 (5th Cir. 1980). Under the *Boeing* standard, the granting of a directed verdict is proper when, viewing the evidence in the light most favorable to the party opposed to the motion, the "facts and the inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Plaintiff argued that the combination of the steel-legged chair and the bare steel deck constituted an unseaworthy condition. Plaintiff testified that other vessels operated by defendant on which plaintiff

3. The trial judge instructed the jury as follows on contributory negligence:
(Regarding the Jones Act claim):
... [I]f you should find, from a preponderance of the evidence in the case, that the plaintiff himself was guilty of some contributory negligence, and that plaintiff's fault caused or contributed to any injuries which plaintiff may have sustained, then you must compare the negligence of the parties, and return a verdict in favor of the plaintiff for a reduced amount, based upon that comparison.
The proper procedure to be followed by the jury in comparing the negligence of the parties, and returning a verdict in favor of the plaintiff for a reduced amount based upon that comparison, is this: first, determine the full amount of all damages sustained by the plaintiff, as a result of the accident; next, compare the negligence or fault of the parties, by determining in what proportion, figured in percentage, plaintiff's own fault contributed as a legal cause of all damages suffered by the plaintiff as a result of the accident; then, reduce the full amount of plaintiff's damages, by subtracting a sum equal to the percentage of the total you find, from a preponderance of the evidence in the case, was caused by plaintiff's contributory negligence; and return a verdict in favor of the plaintiff for the amount remaining.
(Regarding the unseaworthiness claim):
The defendant further alleges that some contributory negligence on the part of the plaintiff himself was a cause of any injuries he may have sustained. Since I have already explained to you the meaning and effect of a finding of contributory negligence on the part of the plaintiff, I will not do so again at length, except to remind you that the defendant has the burden of establishing this defense by a preponderance of the evidence. In short, should you find that unseaworthiness on the part of the defendant caused injury to the plaintiff and that plaintiff himself contributed in causing his own injury, you must reduce any award to the plaintiff by the percentage of plaintiff's own negligence and return a verdict in favor of the plaintiff for the amount remaining.

had served had rubber mats under the chair in their control rooms. Defendant presented testimony that plaintiff misused the chair by leaning back in it and that plaintiff was responsible for the accident because he failed to notice the absence of a rubber mat and order one. Plaintiff's testimony indicated that he could not be responsible for a preexisting condition on the vessel which he had only the most limited time both to notice and attempt to correct before the occurrence of his injury. Plaintiff's testimony further indicated that, had he noticed the absence of a rubber mat upon entering the control room, the condition could not have been corrected in time to prevent his injury. Applying the *Boeing* standard, it cannot be said that the facts and inferences point so strongly and overwhelmingly in favor of defendant that reasonable men could not arrive at a contrary verdict. The district court properly denied defendant's motion for directed verdict on the unseaworthiness claim.

■ Thirdly, defendant complains of the court's use of a general verdict form rather than separate interrogatories on the Jones Act claim, the unseaworthiness claim, and contributory negligence. Defendant urges that the jury's verdict is undecipherable because a general verdict form was used which merely asked the jury: "Who do you find in favor of?"[4] Whatever the validity of defendant's argument, defendant failed to object to the use of the general verdict form during the trial. When plaintiff objected to the lack of separate interrogatories for negligence, unseaworthiness, and contributory negligence, counsel for defendant specifically stated "Your Honor, I think the law permits a general verdict. I think it's allowable." Having failed to object to the use of this verdict form in the

district court, defendant cannot now raise this objection on appeal. *Robin v. Wilson Brothers Drilling*, 719 F.2d 96, 97 (5th Cir.1983).

■ Fourthly, defendant argues that the district court erred in excluding from evidence a deposition from a former lawsuit filed by plaintiff and in limiting testimony about the incident which sparked that former lawsuit. Defendant contends that it was prejudiced by the exclusion of this evidence because the damage award in the instant case may have included an amount for an unreasonable failure to pay maintenance and cure.[5] Defendant apparently contends that the excluded testimony and deposition was crucial to the issue of whether reasonable grounds existed for defendant's failure to pay maintenance and cure. This argument is without merit. Lawrence Hayes, defendant's Manager of Claims and Insurance, testified as to his reasons for discontinuing maintenance and cure payments to plaintiff. Hayes testified that he learned that plaintiff had given false information on his employment application with defendant and on his pre-employment physical. Hayes learned that plaintiff had sustained an injury while working with Red Circle Transportation Company and that plaintiff had not revealed that information on his employment application with defendant in response to a question asking whether plaintiff had any previous injuries or diseases arising from his work. Hayes further testified that information from Red Circle indicated that plaintiff had been convicted of a felony which he did not reveal on his employment application with defendant. Hayes also testified that plaintiff had given dishonest answers to questions pertaining to the

---

4. Although our decision in *Comeaux v. T.L. James & Co.,* 702 F.2d 1023 (5th Cir.1983) might be construed to imply a preference for the use of special interrogatories on the two separate causes of action, we have never announced a rule prohibiting use of the general verdict form in cases where both Jones Act and unseaworthiness claims are tried together; nor are we inclined to do so now.

5. Defendant made maintenance and cure payments to plaintiff through June 10; at that time defendant discontinued payments. The jury was instructed that it could award damages to plaintiff for any unreasonable failure on the part of the employer to pay maintenance and cure when it was due. Since a general verdict form was used, we do not know whether the damage award included damages for unreasonable failure to pay maintenance and cure.

highest rank he obtained in the United States Coast Guard and the type of discharge he was given. Hayes was allowed to testify that defendant, after coming into possession of the Red Circle information, did not find plaintiff credible and therefore doubted that plaintiff's February 9 injury ever occurred. The testimony and deposition excluded by the district court related to an alleged parallel between a prior lawsuit against Red Circle and the instant suit—plaintiff sustained an injury and filed suit against Red Circle after a wage claim was not settled to his satisfaction.[6] The district court found that any relevance this evidence might have as to whether defendant reasonably or unreasonably failed to pay maintenance and cure was outweighed by the prejudice the evidence would work against plaintiff. The district court did not abuse its discretion in finding that the prejudicial effect of this evidence would outweigh any probative value the evidence might have.

 Lastly, defendant argues that it was somehow unfairly prejudiced by the court's submission of two separate interrogatories to the jury, one instructing the jury to consider inflation in determining an appropriate damage award and the other instructing the jury not to consider inflation. Defendant's argument is without merit. In asking the jury to return alternative damage awards, the trial judge prudently anticipated that this court might overrule *Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir.) (en banc), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68–69, 46 L.Ed.2d 58 (1975). Pursuant to the law of this Circuit at the time this case was decided on February 26, 1982, the district court rendered judgment for plaintiff in the lower of the two amounts found by the jury, that is, the amount which did not take inflation into account. On cross-appeal plaintiff asks this Court to reverse the district court solely on the amount of the damage award and to remand for judgment to be rendered in

the amount of $227,500.00, the amount found by the jury which included adjustment for inflation. We are constrained, however, to vacate the instant damage award and remand to the district court for its further proceedings in accord with *Culver II. See Martin v. Missouri Pacific Railroad Co.*, 732 F.2d 435, 436 (5th Cir. 1984); *Culver v. Slater Boat Co.*, 722 F.2d 114, 123 (5th Cir.1983) (en banc) (*Culver II*).

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

**6.** Two months after an incident involving a burnt propellor shaft in June 1978, defendant terminated plaintiff's employment. Plaintiff filed a grievance and was reinstated in May 1979. The instant suit was filed in May 1980.