Damon K. WILSON, Plaintiff-Appellant,

v.

A.A. WAGGENER, Defendant-Appellee.

No. 87–4396.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1988.

Anthony D. Moroux, Charles M. Ponder, III, Domengeaux & Wright, Lafayette, La., for plaintiff-appellant.

L. Lane Roy, Roy & Hattan, Lafayette, La., for defendant-appellee.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Damon K. Wilson filed this diversity action against A.A. Waggener in the United States District Court for the Western District of Louisiana. Wilson alleged that Waggener had failed to make a

$100,000 payment pursuant to the terms of a stock purchase agreement. Following a trial, the district court held that Wilson was barred from collecting the $100,000 because Wilson did not meet the good faith requirement imposed by Louisiana law. Wilson now challenges the district court's finding of bad faith as clearly erroneous. We affirm the district court.

## I

In 1967, A.A. Waggener was one of the initial incorporators of an oil field tool rental company called Petroleum Equipment Tools Company, Inc. (PETCO). In 1976, Waggener became president of PETCO. He hired Damon Wilson to be the company's purchasing agent. D.W. Harrell also worked for PETCO.

In March 1981, Waggener left PETCO to form his own oil tool rental company, Waggener Rental Tools, Inc., which would directly compete with PETCO. Waggener testified that he began setting up the new company while still working for PETCO. When Waggener left PETCO, he took Wilson and Harrell with him to run the new company. As part of Wilson's compensation, he acquired 5% of Oil Service Tools, Inc., the holding company of Waggener Rental Tools, in exchange for a $3,350 promissory note. Wilson also was paid a monthly salary for his work. Harrell had a similar salary and stock plan.

In May 1981 and again in January 1982, Waggener underwent surgery for the removal of a brain tumor. Because Waggener was incapacitated, Wilson and Harrell ran the company. Waggener Rental Tools lost money every year. As a result, sometime in December 1982 Waggener began efforts to sell Waggener Rental Tools.

In January 1983, Waggener entered into a written contract with Wilson. The entire contract, which was in the form of a letter signed by Waggener, was as follows:

Dear Damon [Wilson]:

If we sell Waggener Rental Tools Company on or before June 30, 1983 for $4,000,000.00 or more I will buy your Oil Service Tools, Inc. stock for $150,000.00. If Waggener Rental Tools is sold for less than $4,000,000.00, I will buy your Oil Service Tools, Inc. stock for $100,000.00.

After June 30, 1983 we will talk about a new offer depending on how much cash I have put into Waggener Rental Tools Co. and/or depending on how much the debt has increased during that time frame.

Waggener entered into an identical contract with Harrell. The trial court found that this transaction was structured as a stock purchase "to provide more favorable tax treatment to Damon Wilson than simply a bonus to him would have accomplished in the event the company was sold."

In April 1983, Harrell left the business in an effort to reduce overhead. The court found that

[u]pon his departure, pursuant to the January 1983 letter agreement, and because D.W. Harrell had been a loyal employee but was now being forced of [sic] his job due to financial problems, Waggener offered to give Harrell $50,000.00 less the amount of two promissory notes aggregating $7,999.90. Waggener further proposed to pay Harrell the remaining $50,000.00 if [Waggener Rental Tools] was sold before January 1, 1984.

Waggener then took the company off the market, but in mid-January 1984 notified Wilson that the company was again for sale.

On July 28, 1983, Wilson's contract was renewed, to expire on January 1, 1984. On January 30, 1984, the contract was again renewed, to expire on January 1, 1985. Finally, at the request of Wilson, on September 5, 1984, Waggener executed a contract with identical terms, except that the agreement had no expiration date.

Three weeks after this last contract, on September 21, 1984, Wilson notified Waggener that he was leaving Waggener Rental Tools. On September 26, 1984, Wilson left the business. The trial court found that on or about September 26, 1984, Wilson incorporated his own business, Subrental Tools, Inc., which would compete with Waggener Rental Tools. Subrental Tools officially opened on October 1, 1984.

Waggener sold all of the operating assets of Waggener Rental Tools to PETCO in January 1985 for $2,000,000. After this sale, Waggener Rental Tools engaged in no business (because of a noncompetition clause in the asset-sale agreement) other than passive investment. Because of the sale of assets, Wilson sued Waggener, claiming that pursuant to the agreement Waggener owed him $100,000.

The trial court ruled for Waggener. Although the trial court found the sale of assets to be a sale of the company as contemplated in the contract, the court found that Wilson could not recover because he violated Article 1759 of the Louisiana Civil Code, which imposes a requirement of good faith into all Louisiana contracts. The trial court found that Wilson's and Harrell's contracts were predicated upon their continued employment at Waggener Rental Tools. The court noted that each contract expired by its terms if the business was not sold, and that when Harrell left the business, Waggener was not obligated to pay anything but nonetheless made a gratuitous payment. The court also found that when Wilson convinced Waggener to enter into the contract without an expiration date, Wilson had already determined to stop working for Waggener Rental Tools but did not mention this to Waggener because he knew that with such a disclosure Waggener would not make the new contract. Thus, the court found that Wilson acted in bad faith and could not recover under the contract. Wilson appealed.

## II

 Before trial, Wilson made a motion in limine asking that any evidence relating to any duty he might have had to remain in the employment of Waggener Rental Tools be excluded. Wilson argued that such evidence would violate Louisiana's parol evidence rule because it would allow the court to insert an additional term requiring his continued employment into the unambiguous contract. La.Civ.Code Ann. art. 1848; *White v. Rimmer & Garrett, Inc.*, 340 So.2d 283, 285–86 (La.1976)

(parol evidence may not be admitted when the terms of the contract are unambiguous, unless the exclusion of such evidence would lead to "absurd consequences"). The trial court denied Wilson's motion.

In order to preserve the admission of evidence as error for appellate review, an objection must be made at trial. Fed.R. Evid. 103(a)(1). A motion in limine is insufficient to meet this requirement. A party whose motion in limine is overruled must renew his objection when the evidence is about to be introduced at trial. *Petty v. Ideco, Div. of Dresser Indus., Inc.*, 761 F.2d 1146, 1150 (5th Cir.1985); *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980). Wilson did not object at trial to Waggener's testimony regarding Wilson's obligation to remain at Waggener Rental Tools. Thus, Wilson has not preserved this issue for appellate review.

Notwithstanding a failure to object, Fed.R.Evid. 103(d) provides for appellate review of plain error. The plain error remedy is to be used only in extreme cases where a miscarriage of justice would otherwise occur. *Petty v. Ideco, Div. of Dresser Indus., Inc.*, 761 F.2d at 1150. Plain error is error that is obvious and substantial. *Id.* The admission of this evidence clearly was not such plain error; in fact it was not error at all. Wilson's argument for the exclusion of this evidence misconstrues the relevance of this "parol" evidence. The trial court did not find that Wilson could not recover because he failed to meet his contractual obligation to remain employed by Waggener Rental Tools. Rather, the trial court held that he could not recover because he did not act in good faith. The trial court did not look to the evidence to insert a new provision into the contract. Louisiana law added the new provision—good faith—to the contract. *National Safe Corp. v. Benedict & Myrick, Inc.*, 371 So.2d 792, 795 (La.1979) (holding that even if an obligation of good faith is not explicitly stated in the contract, the law nonetheless inserts such an obligation), and the trial court examined the evidence only to determine whether Wilson met his obligations under that provision. Thus, the

trial court did not err in admitting this evidence.

### III

■ Wilson next attacks the trial judge's conclusion that Wilson acted in bad faith. The judge relied on two factual findings in reaching this conclusion. First, the judge concluded that the contract was predicated on Wilson's continued employment. Second, the judge concluded that Wilson acted in bad faith by setting up a competing business without informing Waggener that he was doing so, while at the same time renegotiating the contract to eliminate the time limit. Wilson argues that these factual findings are clearly erroneous. *See McCarty Corp. v. Pullman-Kellogg, Div. of Pullman, Inc.*, 751 F.2d 750, 756 (5th Cir.1985).

Wilson first asserts that the finding that Wilson was setting up a new business while renegotiating the new contract was unsupported by any evidence. However, a review of the record shows that the judge's conclusion is easily supported by reasonable inferences from the evidence. The contract was renegotiated on September 5, 1984. A mere three weeks after that date, on September 26, Wilson left Waggener Rental Tools, and a few days after that, on October 1, Wilson had opened his new business. Moreover, Wilson consulted with a lawyer about incorporating the new business on September 25—one day before he left Waggener Rental Tools. From the short time span of this sequence of events, it appears reasonable for the judge to have concluded that Wilson must have been planning to leave when renegotiating the contract. Wilson asserts that the renegotiation of the contract was motivated by other concerns—he states, for example, that he wanted to avoid "what had happened" to Harrell—implying that the nearness to his departure was mere coincidence. However, Wilson's asserted triggering event, the events involving Harrell, took place over a year earlier. It thus was not clearly erroneous for the judge to believe the timing evidence rather than Wilson's testimony.

Wilson next asserts that the trial court ignored the evidence that the contract was a bonus for *past* services rather than an incentive payment for his and Harrell's continued employment. Wilson notes that Waggener did not present this incentive payment argument in his first Answer and suggests that the issue was raised merely one month before trial as an "afterthought." At trial, Wilson and Harrell both testified that the contract was entered into solely as a bonus for past loyalty and had nothing whatsoever to do with future services. Wilson also notes that the contract nowhere mentioned any requirement of future services.

There was, however, plausible, conflicting evidence on all of these points, and the judge was therefore not clearly erroneous in accepting this evidence and ruling against Wilson. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). First, Wilson's and Harrell's testimony was contradicted by Waggener, who stated that the purpose of the contract was to induce Wilson and Harrell to stay to run the company while Waggener recuperated from his operations. Second, the parties never entered into the contracts until negotiations for the sale of Waggener Rental Tools had begun and Wilson and Harrell had expressed concern about their futures with the company. This evidence indicates that the contract's purpose was to insure their remaining with the company rather than their going immediately to look for other work. Third, it would not have made sense to include expiration dates in the contracts if the contracts were bonuses for past services. Fourth, Waggener's testimony indicated that the parties did not include a clause about future services because they thought they could obtain favorable tax treatment by structuring the transaction as a stock purchase rather than compensation. The evidence presented by both sides was plausible, although conflicting, and the judge was therefore not clearly erroneous in crediting Waggener's evidence over Wilson's.

## IV

For the reasons set forth above, we AFFIRM the judgment of the district court.