15 F.3d 1089
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Debra Lee ROBBINS, Plaintiff-Appellee,
v.
ALEUTIAN QUEEN SEAFOOD, INC.; M/V Aleutian Queen, Defendants,
and
JKP Fisheries, Inc.; F/V West Point, Defendants-Appellants.
Debra Lee ROBBINS, Plaintiff-Appellee,
v.
ALEUTIAN QUEEN SEAFOOD, INC.; M/V Aleutian Queen,
Defendants-Appellants.
 Nos. 92-35372, 92-35398.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1993.
Decided Jan. 28, 1994.
 
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Debra Robbins worked as a crab processor employed by the M/V Aleutian Queen, which is operated by Aleutian Queen Seafood, Inc. (collectively "the Aleutian Queen"), and was working aboard the F/V West Point, which is operated by JKP Fisheries, Inc. (collectively "the West Point"), when she fell from a crane and was injured. Robbins sued the owners of both ships under the Jones Act, 46 U.S.C. Sec. 688, and under general maritime law. The shipowners appeal the district court's finding of liability, the amount of damages, and two evidentiary decisions.
 
 
 3
 * The West Point argues, and Robbins concedes, that the West Point cannot be held liable under the Jones Act because Robbins was never its employee. See California Home Brands, Inc. v. Ferreira, 871 F.2d 830, 833 (9th Cir.1989) ("It is well-settled that the Jones Act created a negligence cause of action only against the employer.").
 
 
 4
 Although Robbins claims that the court did not apply the Jones Act to West Point, the record is clearly to the contrary. We therefore reverse and remand for the district court to determine whether the West Point is liable under general maritime law, not the Jones Act.
 
 II
 
 5
 The Aleutian Queen argues that the district court erred by finding it 100% liable under the Jones Act because Robbins was partially responsible for her injuries and that it is entitled to, at least, a partial trial on the issue of comparative negligence. The Aleutian Queen further maintains that a new trial is required since comparative negligence permeates all issues, including that of the Aleutian Queen's own negligence.
 
 
 6
 We conclude that the district court erred because it refused to consider whether and to what extent Robbins' own negligence played a role in her injuries. Toward the end of the trial, the court announced, "[w]e will take a recess, 15 minutes, and then we will talk about the question of any contributory negligence, if any, as far as the West Point is concerned, not the Defendant Aleutian Queen." This was clear error because the plaintiff's comparative negligence should be considered under Jones Act claims. See Vance v. American Hawaii Cruises, Inc., 789 F.2d 790 (9th Cir.1986); Matthews v. Ohio Barge Line, Inc., 742 F.2d 202, 205 n. 3 (5th Cir.1984).
 
 
 7
 Although we could grant a new trial on a limited number of issues, "courts must keep in mind that the item to be retried must be 'so distinct and separable from the others that a trial of it alone may be had without injustice.' " Hasbrouck v. Texaco, Inc., 663 F.2d 930, 933 (9th Cir.1981) (quoting Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931)). Determining the comparative negligence of Robbins requires the factfinder to consider the negligence of both the Aleutian Queen and Robbins in tandem. Therefore, we reverse and remand the issue of negligence of both parties.
 
 III
 
 8
 The West Point argues that the district court erred when it concluded that the West Point was unseaworthy because it misused its crane in attempting to transport Robbins to the Aleutian Queen. We agree. An "isolated, personal negligent act" of another crew member does not cause a ship to be unseaworthy. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 500 (1971). Further, "the [Supreme] Court has repeatedly taken pains to point out that liability based upon unseaworthiness is wholly distinct from liability based upon negligence." Id. at 498.
 
 
 9
 Even before Usner, this circuit rejected the concept of "instant unseaworthiness." Indeed, this court rejected a seaman's argument that a "vessel was rendered unseaworthy by reason of negligence of the gantry crane operator at the very moment of the injury." Tim v. American President Lines, Ltd., 409 F.2d 385, 389 (9th Cir.1969). Tim explained that "[a] long line of cases in this Circuit has consistently rejected any doctrine of 'instant unseaworthiness.' We have held that liability attaches if an act leaves the vessel in an unsafe condition subsequently resulting in injury but does not if the act and resulting injury are simultaneous." Id. The record does not support the inference nor did the district court make a factual finding that it was the established practice of the West Point to use its crane to transport personnel between ships. See Weeks v. Alono Cothron, Inc., 466 F.2d 578, 581 (5th Cir.1972).
 
 IV
 
 10
 The Aleutian Queen argues that the district court erred when it concluded that the Aleutian Queen was unseaworthy because it improperly supervised the crab off-loading process. We agree. We can find no relevant case law holding that failure to supervise the crew, in general, renders a vessel unseaworthy. And there is certainly no applicable case law holding that the inexperience of one crew member renders the entire vessel unseaworthy.
 
 V
 
 11
 Appellants urge that the district court erred in admitting Mitchell Early's written description of the accident under the business record exception to the hearsay rule. We agree. For a statement to fall within this exception, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." Clark v. City of Los Angeles, 650 F.2d 1033, 1036-37 (9th Cir.1981) (quoting Fed.R.Evid. 803(6)). Early was a seafood processor whose job did not regularly include making accident reports, so this statement was not made in the regular course of his duties and, thus, is inadmissible. See Palmer v. Hoffman, 318 U.S. 109, 111 (1943); Clark, 650 F.2d at 1037. Furthermore, if Early's statement were indeed recorded for purpose of litigation, it would make the business records exception inapplicable. Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258-59 (9th Cir.1984).
 
 
 12
 Robbins argues for the first time on appeal that the statement was not hearsay under Federal Rule of Evidence 801(d)(2). "Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment." Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir.1986). If the proponent of the evidence does not show that the declarant is an agent whose statements "concerned a matter within the scope of the agency," the statement is properly excluded as hearsay. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1440 (9th Cir.1990). Because Robbins did not advance this argument below, she did not lay the proper foundation and did not meet her burden of proof.
 
 
 13
 Robbins further argues that, even if the admission were improper, the statement was cumulative and did not prejudice either appellant. The statement clearly was not cumulative because no one else described how the accident happened. Further, the statement was prejudicial since the district court relied on it in making its determination.
 
 VI
 
 14
 Appellants also argue that the district court abused its discretion by sua sponte quashing appellants' subpoena of Mark Felix. We agree. First, Robbins never suggested that the subpoena was inappropriate before the subpoena was quashed. Second, Mark Felix was clearly listed as a witness to be called by the Aleutian Queen in the parties' Agreed Pretrial Order. Third, the court never gave the appellants a chance to explain why Mark Felix was being called as a witness before it quashed the subpoena.
 
 VII
 
 15
 Appellants also argue that the damages award was clearly erroneous. We agree. First, the district court sua sponte awarded Robbins $217,000 more than she requested for suffering, mental anguish, and future loss of enjoyment of life. Second, the district court summarily quashed the subpoena of Mark Felix, who apparently would have testified that Robbins had not suffered a decrease in her physical activities and had abused drugs and alcohol, which affected her recovery. Third, the amount that the district court awarded is larger than that awarded in similar cases. See, e.g., Williams v. Chevron USA, Inc. 875 F.2d 501 (5th Cir.1989) (damage award decreased to $200,000 because $400,000 for pain and suffering "entirely disproportionate" for two herniated discs, pain, numbness and depression); Harper v. Zapata Off-Shore Co., 741 F.2d 87 (5th Cir.1984) (damage award decreased by $200,000 because $485,000 for pain and suffering excessive for plaintiff who suffered ruptured discs, underwent two laminectomies, and experienced 15% to 30% disability).
 
 VIII
 
 16
 We decline the appellants' request to have the case remanded to a different judge. Remand to a different judge is reserved for "unusual circumstances," none of which are present here. United States v. Arnett, 628 F.2d 1162, 1165 (9th Cir.1979).
 
 
 17
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3