**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30843.

Leroy J. MARCEAUX, Plaintiff-Appellee,

v.

CONOCO, INC., Defendant-Appellant.

Oct. 13, 1997.

Appeal from the United States District Court for the Western District of Louisiana.

Before DeMOSS and DENNIS, Circuit Judges, and LEE, District Judge[*].

DENNIS, Circuit Judge:

Alleging Jones Act negligence pursuant to 46 U.S.C.App. § 688 and unseaworthiness under the general maritime law, the plaintiff-appellee, Leroy J. Marceaux, brought this suit against his employer, Conoco, Inc., the defendant-appellant herein, for injuries he sustained while working aboard the M/V LAKE CHARLES, a vessel owned and operated by Conoco. Following a trial on the merits, a jury returned a verdict in favor of Mr. Marceaux finding that the defendant had been negligent under the Jones Act, that the vessel had been unseaworthy and that both had been a legal cause of injury to the plaintiff. In addition, the jury found that the plaintiff had not been contributorily negligent under either a Jones Act negligence or an unseaworthiness standard. A judgment

[*]District Judge of the Southern District of Mississippi, sitting by designation.

was duly entered in the plaintiff's favor. The defendant has appealed the judgment for the plaintiff on the following grounds: (1) that the district court erred in allowing the plaintiff's expert, Dr. Gary Nelson, to testify at trial, (2) that the evidence was insufficient to support a verdict of Jones Act negligence or unseaworthiness, and (3) that the district court committed reversible error when it refused to instruct the jury as to the plaintiff's alleged additional duty to make the work place safe or to inspect the premises. Finding no error, we affirm the judgment of the district court.

*Background*

Prior to the accident which gave rise to this litigation, the plaintiff-appellee, Leroy Marceaux, was employed by the defendant-appellant, Conoco, Inc., as a pilot/wheelman aboard the M/V LAKE CHARLES. The M/V LAKE CHARLES, which is owned by Conoco, is a "pushboat" and is utilized in pushing barges carrying oil and gas products back and forth from oil refineries and facilities within the Louisiana-Texas Gulf region. On May 21, 1993, the date of the accident in question, the M/V LAKE CHARLES was docked at Westlake, Louisiana after pushing two barges loaded with an oil by-product, carbon black, from Port Arthur, Texas.

Once docked, it became necessary for the crew of the M/V LAKE CHARLES to off-load the carbon black onto the dock. The off-loading operation was a two man job in which the vessel's tankerman, Mike Fruge, was in charge. Marceaux was assigned to assist Fruge in preparing the barges and then off-loading the

2

carbon black from the out-bound barge to the in-bound barge and then onto the dock. In preparing the barges for off-load, Marceaux and Fruge had to connect a number of large heavy crossover hoses to facilitate pumping the product off the barge. During the preparation, Fruge directed Marceaux to pick up one of the crossover hoses and maneuver it into the proper position for connection to a flange. When Marceaux attempted to pick up the hose he felt a sharp pain in the lower part of his back, groaned, and then fell to his knees. He then needed the help of his shipmate to reach his feet. Marceaux had injured his back while attempting to lift the hose and later learned that he had in fact ruptured two disks.

Following the May 21, 1993 accident, Marceaux filed the instant complaint alleging that he was entitled to recover for his back injury under two theories of liability, *viz.* the Jones Act and/or the general maritime law of unseaworthiness. Conoco asserted various defenses to the suit including that the accident did not occur and that, alternatively, Marceaux's own negligence had caused his injury.

A jury trial ensued. At trial, the plaintiff described how, during his attempt to lift the crossover hose, his back was injured and the extent of those injuries. Marceaux stated that, while he had been taught proper lifting procedures, he had never been instructed not to lift something as heavy as the crossover hose without mechanical or manual assistance. Moreover, he informed the jury that he had been attempting to lift the heavy hose pursuant to

3

the direction of Tankerman Fruge who was in charge of the operation. Subsequently, Marceaux's testimony concerning Tankerman Fruge's authority over the off-loading procedure was corroborated by Larry Morrow, a former Conoco employee. In addition to these witnesses, Marceaux called one expert, Dr. Gary Nelson, in support of the liability portion of his case. Dr. Nelson testified that Conoco had been negligent in its training of Marceaux because it failed to instruct him not to lift any object weighing as much as the crossover hose without consulting with management first or how the crossover hose's weight correlated with the lifting procedures he had been taught. Prior to trial, Conoco had sought, through a motion in limine, to have Dr. Nelson's expert testimony excluded on the grounds that his testimony would not be helpful to the jury and was thus inadmissible. Fed.R.Evid. 702. The motion was denied. At trial, the plaintiff, after a voir dire of Dr. Nelson's qualifications by both sides, tendered Dr. Nelson as an expert in safety with an expertise in workplace lifting. The defendant did not object to Dr. Nelson's qualifications or testimony at trial.

After a five day trial, the jury returned a verdict in favor of Marceaux. After finding that an accident had occurred on May 21, 1993, the jury determined that Conoco had been negligent under the Jones Act, that such negligence had been a legal cause of Marceaux's injury and that Marceaux had not been contributorily negligent under the Jones Act. Additionally, in answers to separate interrogatories, the jury held that the M/V LAKE CHARLES was unseaworthy, that the unseaworthiness had been a legal cause of

4

injury to the plaintiff and that the plaintiff had not been contributorily negligent under the general maritime law. A judgment was entered in favor of Marceaux and this appeal followed.

*Analysis*

1. Dr. Gary Nelson—Plaintiff's Expert Witness

Conoco contends that the district court committed manifest error in permitting the plaintiff's expert, Dr. Gary Nelson, to testify at trial. Dr. Nelson was tendered by the plaintiff, and accepted by the district court, as an "expert in safety with an expertise in workplace lifting." R. Vol. 8, p. 19. His testimony consisted of explaining to the jury the nature of workplace safety engineering, an evaluation of the defendant's training procedures in regard to lifting in the workplace and why, based on studies and his analysis, the defendant had failed to properly train Marceaux to handle the situation he was faced with on May 21, 1993. Conoco asserts on appeal that Dr. Nelson's testimony was within the common knowledge of the jurors, would not have been helpful to the jurors in determining a fact at issue, and was thus inadmissible under Federal Rule of Evidence 702. However, the plaintiff-appellee directs the court to the fact that the defendant-appellant did not object to Dr. Nelson's testimony when it was offered at trial, therefore, waiving its right to object on appeal. *See* Fed.R.Evid. 103(a)(1).

Conoco offers two arguments in response. First, Conoco contends that its motion in limine seeking to exclude Dr. Nelson on the grounds stated above, which was denied prior to trial, should

be considered as preserving their objection to Dr. Nelson's testimony for appellate purposes. Conoco's assertion runs contrary to the clearly established law of this circuit. In *Marcel v. Placid Oil Co.,* 11 F.3d 563 (5th Cir.1994), the defendant sought to prevent the plaintiff's expert economist from testifying through a motion in limine which was denied prior to trial. *Marcel,* 11 F.3d at 566. When the economist's testimony was proffered at trial, the defendant did not object to his testimony and, therefore, the court held it could not contest the district court's ruling as to the economist on appeal. *Id.* (citing Fed.R.Evid. 103(a)(1)). In so holding, the court stated that "[t]he general rule in this Circuit is that "an overruled motion in limine does not preserve error on appeal.' " *Id.* at 567 (quoting, *Rojas v. Richardson,* 703 F.2d 186, 189 (5th Cir.1983)); *See also Wilson v. Waggener,* 837 F.2d 220, 222 (5th Cir.1988) ("A party whose motion in limine is overruled must renew his objection when the evidence is about to be introduced at trial."). The reasoning behind this rule is a sound one. A requirement of a contemporaneous objection to evidence previously objected to gives the trial judge an opportunity to "reconsider his in limine ruling with the benefit of having been witness to the unfolding events at trial." *United States v. Graves,* 5 F.3d 1546, 1552 (5th Cir.1993). In this case, Conoco's failure to object at trial to Dr. Nelson's testimony when offered cannot be salvaged by their motion in limine.

In Conoco's second argument, they assert that their questioning of Dr. Nelson at trial about his qualifications and the

plaintiff's objection to that line of questioning considering the district court's prior ruling effectively "reiterated" Conoco's objection to Dr. Nelson. This contention is without merit. Conoco's cross-examination of Dr. Nelson's qualifications was clearly an attack on his credibility concerning maritime accidents and not on his ability to testify under Rule 702. In addition, the bench conference concerning the plaintiff's objection did not, in any way, renew the defendant's in limine objection to Dr. Nelson's expert testimony. *See* Fed.R.Evid. 103(a)(1).

Notwithstanding the defendant's failure to object at trial, we may review its objection to the admission of Dr. Nelson's testimony for plain error. Fed.R.Evid. 103(d). Reversal for plain error is only appropriate where the alleged error was obvious, substantial and would result in a "miscarriage of justice" if not corrected. *Wilson*, 837 F.2d at 222. The district court's admission of Dr. Nelson's expert testimony was clearly not plain error. Dr. Nelson provided the jury with "specialized knowledge" concerning safe lifting practices and training procedures which helped the jury to "understand the evidence" and "determine a fact in issue" *viz.* whether Marceaux was improperly trained to handle the situation he was confronted with aboard the M/V LAKE CHARLES. *See* Fed.R.Evid. 702.

2. Was the jury's finding of unseaworthiness unsupported by the evidence?

One of the two alternative theories of liability alleged by the plaintiff in this action was that the M/V LAKE CHARLES was unseaworthy and that this unseaworthiness was a legal cause of the

plaintiff's injuries. The general maritime law places upon a vessel owner a non-delegable duty to provide a seaman with a vessel reasonably fit for its intended use. *See Comeaux v. T.L. James & Co.,* 666 F.2d 294, 298-99 (Former 5th Cir.1982); 1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-25 (2d ed. 1994). This duty can be breached and a vessel rendered unseaworthy by an inadequate, understaffed or ill-trained crew. *Orient Mid-East Lines, Inc. v. A Shipment of Rice,* 496 F.2d 1032, 1040 (5th Cir.1974); *Brown v. Cliff's Drilling Co.,* 638 F.Supp. 1009, 1014 (E.D.Tex.1986); 1B BENEDICT ON ADMIRALTY § 24 at 3-74 (7th ed. 1996).

At trial, the plaintiff's expert, Dr. Nelson, testified that Marceaux was ill-trained for the task he was assigned to perform aboard the M/V LAKE CHARLES. Marceaux confirmed his lack of knowledge regarding his ability to lift the crossover hose using the procedures he had been taught by Conoco and testified as to how the attempted lift injured his back. In addition, there was testimony offered as to the lack of mechanical devices to aid him in the off-loading operation. There was clearly sufficient evidence for the jury to find that the vessel was unseaworthy due to an improperly trained crew and that the vessel's unseaworthy condition was a legal cause of injury to the plaintiff. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc* ). Having affirmed the jury's verdict as to unseaworthiness, we need not address the defendant's contentions regarding the sufficiency of the evidence supporting the jury's finding of Jones Act negligence.

The trial judge instructed the jury as to the defendant's defense of contributory negligence in two separate sections of the charge. One section addressed contributory negligence under the Jones Act and the other under the general maritime law. The defendant did not object to either instruction at trial and does not object to the unseaworthiness contributory negligence charge on appeal. Additionally, the district court provided the jury with separate interrogatories requesting separate findings of contributory negligence as to both the plaintiff's Jones Act and unseaworthiness claim. *See* Record Excerpt 3. The jury found no contributory negligence under either standard. Having conducted an independent review of the district court's unseaworthiness contributory negligence instruction, we find that it correctly stated the law of contributory negligence under the general maritime law, *viz.* ordinary prudence. Considering the trial court's separate charge and interrogatories on contributory negligence this court need not address the defendant-appellant's assignment of error to the district court's Jones Act contributory negligence charge raised in its reply brief.

3. Did the district court commit manifest error in refusing to instruct the jury as requested by the defendant-appellant with regard to the plaintiff's alleged duty to eliminate alleged hazards?

Before the trial court instructed the jury in this matter the court gave counsel for both sides an opportunity to place their objections to the jury charges on the record. At that time, Conoco requested that the trial court give the jury an additional contributory negligence instruction referencing the plaintiff's

alleged duty to make the workplace safe or to inspect the premises.[1] Conoco cited the court to *Kendrick v. Illinois Central Gulf Railroad,* 669 F.2d 341 (5th Cir.1982) in support of its request. The district court declined to add the defendant's *Kendrick* charge to its standard contributory negligence instruction. In denying the defendant's motion for a new trial, the district court stated that it refused to give the requested instruction because it believed that the evidence was conflicting on this point and that such a charge would take the issue away from the jury. Record Excerpt 5, p. 6.

We review the district court's refusal to give a requested jury instruction for an abuse of discretion. *Jackson v. Taylor,* 912 F.2d 795, 796 (5th Cir.1990). "[I]t is error to refuse a jury instruction only if there are pleadings and sufficient evidence to support the instruction." *Id.* In this case, the district court did not abuse its discretion in refusing to give the *Kendrick* charge. The *Kendrick* charge is proper only in cases where the jury could find that the injury in question "was due solely to the plaintiff's failure to carry out his duty to his employer." *Matthews v. Ohio Barge Line, Inc.,* 742 F.2d 202, 205 (5th

---

[1]Specifically, the defendant requested the following instruction:

"Although even the slight negligence by the Jones Act employer will allow the plaintiff to recover and the vessel owner than [sic] has a nondelegable duty to provide its employee with a safe place to work, the employee's duty to make the workplace safe or to inspect the premises may mitigate the employer's responsibility for providing a safe place to work." R. Vol. 11, p. 3-4.

Cir.1984). The evidence did not support a conclusion that the plaintiff was the sole employee responsible for the off-loading procedure or his work space. In fact, two witnesses testified that the tankerman was in charge of the off-loading operation. Moreover, the defendant points to no evidence for the contention that the plaintiff was the only individual responsible for making sure the premises were safe. In summary, the trial court provided the jury with an appropriate standard contributory negligence instruction and, considering the evidence presented in this case, properly refused to give the defendant's additional instruction on this point. *Id.*

*Conclusion*

Finding no error in the disposition of this matter by the district court, we AFFIRM.