Frank GLAZE, Plaintiff–Appellant

v.

HIGMAN BARGE LINES, INCORPO-RATED, Defendant–Appellee.

No. 14–31301.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 2015.

Timothy John Young, Esq., Tammy Dianne Harris, Esq., Megan Cole Misko, Young Firm, New Orleans, LA, for Plaintiff–Appellant.

John Fredrick Kessenich, Esq., Trial Attorney, Ryan Michael Bourgeois, Attorney, Daigle Fisse & Kessenich, P.L.C., Madisonville, LA, for Defendant–Appellee.

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

PER CURIAM: *

Frank Glaze, a seaman formerly aboard the M/V SNIPE, appeals the district court's grant of summary judgment in favor of defendant Higman Barge Lines, Inc. on his Jones Act, unseaworthiness, and maintenance and cure claims. We affirm.

Glaze worked for Higman as a relief captain from December of 2009 until October of 2013. He alleges that he was injured doing maintenance on the M/V SNIPE on August 27, 2013,[1] that he was

1. Glaze alleges that he was injured while using a needle gun to chip and grind rust from the M/V SNIPE's bulwark and rub rail. Specifically, he claims that he experienced numbness in his hands while using the needle gun, and pain in his elbows, knees, and lower back

instructed to do the work by the captain without conducting a job safety analysis, and that unsafe methods of work created the M/V SNIPE to be an unseaworthy vessel.

This court must decide whether there is any genuine dispute of material fact that will not allow this summary judgment. While all reasonable inferences favor the plaintiff, he "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007).

The Jones Act claim fails. The captain's alleged failure to conduct a job safety analysis did not establish a violation of the standard of care. While a company's safety manual informs what constitutes "ordinary prudence," it does not, in itself, create a legal duty. *See Harrison v. Seariver Mar., Inc.*, 61 Fed.Appx. 119 (5th Cir. 2003).[2] Glaze does not rebut evidence that grinding and stripping rust with a needle gun is a routine activity—and we have persuasively held that the failure to perform job safety analyses on such activities is not a breach of duty. *See id.* ("More to the point, there is no requirement at law that a [job safety analysis] be conducted, especially for routine tasks.").

Likewise, Glaze has not provided any evidence that Damge's failure to institute a policy limiting how long seamen can use a needle gun, or his failure to instruct Glaze how to use a needle gun, violated ordinary prudence. As an experienced seaman of forty years, Glaze admits that he knew how to use a needle gun, and Glaze has not contested testimony that he trained at least one other member of the crew on how to use a needle gun to chip rust. As such, Damge was not negligent in failing to instruct Glaze on how best to perform a routine task in which Glaze was well-versed. *See Robinson v. Zapata Corp.*, 664 F.2d 45, 48 (5th Cir.1981) (reviewing a district court's grant of a directed verdict and concluding that "[d]efendant could not have been negligent in failing to supervise or train an employee in off-shore welding when that employee clearly stated that he had had two years' experience in off-shore welding").

The unseaworthiness claim also fails. A vessel is unseaworthy if "the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir.2001). Unseaworthiness may arise from a variety of conditions—the vessel's "gear might be defective, her appurtenances in disrepair, her crew unfit." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). An "inadequate, understaffed, or ill-trained crew" may also beget liability. *Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734 (5th Cir.1997), *superseded on other grounds by rule*, FED.R.EVID. 103(a), *as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir. 2002).

Glaze contends that the M/V SNIPE was unseaworthy because (1) Damge did not perform a job safety analysis, (2) the ship did not have safe housekeeping measures, and (3) Glaze was required to chip and grind the rub rail only one month prior to the M/V SNIPE entering dry dock

---

2. Although Glaze's complaint initially identified the date of injury as August 27, 2013, he now contends that his injury occurred on either July 27 or 30, 2013.

2. Although *Harrison* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n. 7 (5th Cir.2006) (citing R. 47.5.4).

for maintenance. He argues that these shortcomings amount to unsafe work methods. *See Rogers v. Eagle Offshore Drilling Servs., Inc.,* 764 F.2d 300, 303 (5th Cir.1985).

Foremost, Damge's failure to conduct a job safety analysis, even if negligent, is not actionable as an unseaworthiness claim. *See id.* ("[I]solated personal negligent act[s] occurring on [a] vessel [do] not render the vessel unseaworthy."). Nor do Glaze's allegations amount to unsafe work methods. "[A] plaintiff must present sufficient evidence to raise a jury question whether a method of operation is unsafe, before a fully equipped vessel, with all its gear in good working order, can be rendered unseaworthy." *Id.* at 304. There is no evidence the needle gun was not working properly nor evidence that its use aboard the M/V SNIPE was unsafe. *See Lett v. Omega Protein, Inc.,* 487 Fed.Appx. 839, 846 (5th Cir.2012). Likewise, that the M/V SNIPE was scheduled to undergo routine maintenance, without more, does not demonstrate that any appurtenance was unfit for its intended purpose or that the crew was "inadequate, understaffed, or ill-trained." *Marceaux,* 124 F.3d at 734. In short, the maintenance schedule is not relevant to this unseaworthiness claim. Finally, Glaze suggests in passing that scrubbing the bulwark could have been achieved in a safer manner. We have held that "this evidence alone—without evidence indicating that the needle gun is unsafe—is not enough to create a genuine factual dispute regarding unseaworthiness." *Lett,* 487 Fed.Appx. at 846.

Finally, the maintenance and cure claim fails, because this record will not support a material issue of Glaze's injury during service on the M/V SNIPE. He contends here that the captain ordered him to chip and grind the side of the vessel along with another worker on July 27 or 30, 2013;

and after doing it he felt pain in his back, elbows, and knees. But the captain testifies that he did not instruct Glaze to do this, and one fellow workman testifies that he remembers painting the ship alongside Glaze but nothing else and another workman testifies that he did not remember Glaze chipping on the ship and that would be directed by the captain. There is no evidence that Glaze was injured while working on this ship except for his claim now, and all of his own prior conduct was to the contrary. He did not report an injury to Higman until this suit was filed and he told doctors from whom he sought treatment for his pain that he had not been injured. Even the vessel logs, for the July dates he finally chose, do not report this chipping work done then. His unsubstantiated assertion, inconsistent with his own statements and this contrary evidence, deny him a genuine issue for trial. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

AFFIRMED.