**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Georgina Barbara DIAZ,
Defendant–Appellant.**

No. 90–2681.

United States Court of Appeals,
Fifth Circuit.

July 12, 1991.

Lawrence A. Walsh, Brownsville, Tex. (court-appointed), for defendant-appellant.

James L. Turner, Paula Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before REAVLEY, POLITZ and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Georgina Barbara Diaz appeals her bench trial conviction of violating 8 U.S.C. § 1324(a)(1)(B) and 18 U.S.C. §§ 2, 371. For today's disposition we need consider only one of the several issues she raises, the sufficiency of the evidence in light of the specific charges in the indictment. For the reasons assigned we reverse the convictions and return the matter to the district court for entry of an appropriate judgment of dismissal.

## Background

Diaz and Jose Porfirio Castillo–Enamorado were jointly indicted for conspiracy to violate 8 U.S.C. § 1324(a)(1)(B), by transporting undocumented aliens, and for two separate substantive counts involving the transporting of Rafaela Diaz–Morillo and Eddie Diaz–Angel. At the trial on the merits only two witnesses were offered by the

government, Border Patrol Agents Yale Pope and Ricardo Lopez. Agent Lopez testified only with reference to the reading of *Miranda* rights to Diaz. The court found Diaz guilty of all three counts. No written reasons were assigned. Diaz was sentenced to three years probation and the statutory special assessments.

The merits trial took only a few minutes and consisted, for all practical purposes, of the testimony of Agent Pope. In addition, the court took judicial notice of the guilty plea of Rafaela Diaz–Morillo to the misdemeanor charge of being present in the United States without the necessary documentation.

The evidence reflects the following scenario. Sometime around 1:30 a.m. on December 10, 1990, Agents Pope and Lopez, in a marked unit, drove north past the rest stop located about seven miles north of the Sarita checkpoint. A number of vehicles were in the main lot of the rest area. At least two vehicles, an 18–wheeler and a passenger car, were located on the drive leading back to the highway, with the auto being a few feet in front of the truck/trailer. It appeared that one person, later identified as Diaz, was asleep in the car. Approximately 30 minutes later the agents were driving south and as they drew abreast of the above-noted car they saw its headlights flash two or three times. Looking backwards they saw the vehicle proceed north out of the rest area. The agents crossed over at the nearest available point and pursued the vehicle, stopping it about a mile or so north of the rest area. Diaz was driving, accompanied by seven apparent aliens. Diaz was arrested and given *Miranda* warnings. She invoked her right to remain silent and to have counsel present during questioning. With Diaz standing outside and to the rear of the vehicle, Agent Lopez questioned the occupants and learned that all but perhaps one were aliens and not properly documented. When asked pointedly by the court whether Diaz could hear the agents' conversation with the aliens relative to their illegal status Agent Lopez candidly answered: "I couldn't say for sure."

The government took the pretrial deposition of Eddie Diaz–Angel. The bulk of the transcript of evidence in this case involves the government's attempt on three separate occasions to prove its entitlement to use the deposition of Diaz–Angel. The court offered a fourth opportunity on the day of trial but the government declined and opted to proceed with trial. The court refused to permit its use in evidence. The government did not cross-appeal this ruling. The case proceeded to trial on the sparse evidence above noted.

On appeal Diaz contends that the record contains insufficient evidence that the two named aliens were undocumented and that she was aware of their illegal status, and that she conspired with the codefendant. The government responds that the guilty pleas of Diaz–Morillo and Diaz–Angel establish the former and Diaz's failure to challenge the statements about status by the aliens at the scene constituted "adoptive admissions" of such by Diaz, despite her invocation of her right to remain silent and her request that interrogation proceed only in the presence of her counsel.

*Analysis*

■ To establish a violation of 8 U.S.C. § 1324(a)(1)(B) the government must prove (1) the transporting or moving of an alien within the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's status, and (4) that the defendant acted willfully in furtherance of the alien's violation of the law. *United States v. Alvarado–Machado,* 867 F.2d 209 (5th Cir.1989); *United States v. Merkt,* 764 F.2d 266 (5th Cir.1985) (*Merkt I*). The alien's status is an essential element, *Alvarado–Machado,* as is the defendant's knowledge of the illegal status and her knowing and intentional furtherance of the violation of the law by the alien. *United States v. Merkt,* 794 F.2d 950 (5th Cir.1986) (*Merkt II*), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

■ We conclude that the status and Diaz's knowledge of the status of the aliens named in the indictment were not proven beyond a reasonable doubt by admissible evidence. We may not consider the conviction of Rafaela Diaz–Morilla. In *United States v. Crispin,* 757 F.2d 611 (5th Cir.1985), a case involving the same statute and the same evidentiary technique of relying on the convictions of the aliens, we specifically held:

> The judgments of conviction were admitted improperly. They were admitted for no purpose other than to prove the nine aliens' convictions, thereby establishing that the aliens were in this country unlawfully. This is flatly contrary to the directive of Fed.R.Ev. 803(22), which provides only for the admissibility of
>
> [e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to the judgment, *but not including when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused.*

*Id.* at 613 (citations omitted, emphasis supplied). We footnoted two important constitutional interests that are violated by this use of evidence. *Id.* at 613 n. 1. The second, denial of the confrontation right, applies with full force herein. The government's effort to distinguish *Crispin* and to avoid the impact of its holding by arguing that the court could take notice of the convictions as "adjudicative facts" is not persuasive and is rejected.

■ Equally unavailing is the government's effort to establish that Diaz had the requisite knowledge and willfulness because at the scene she did not protest the statements by the aliens that they had no entry papers. This "adoptive admission" argument fails for two reasons: (1) the record does not establish that the statements were made within the hearing of Diaz, and (2) even if they were so made, the fact that she remained silent after administration of the Miranda advisory may not be construed against her. No presumption

arises from this silence, otherwise the constitutional right to remain silent indeed would be rendered hollow. *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136–37, 45 L.Ed.2d 99, 105 (1975) ("[T]he situation of an arrestee is very different, for he is under no duty to speak and, as in this case, has ordinarily been advised by government authorities only moments earlier that he has a right to remain silent, and that anything he does say can and will be used against him in court.").

The convictions are not supported by sufficient evidence and they are, accordingly, REVERSED.[1]

---

**1.** In an apparent recognition of the inadequacy of the evidence the government alternatively requests that we reverse the trial court's ruling on use of the deposition of Diaz–Angel and remand for a new trial, citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). We decline to do so. First, there was no cross-appeal and that issue is not before us and, even if it were, *Lockhart* is inapposite; there the evidence had been found adequate for a conviction. Such is not the case herein.