IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40096
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ROMERO-CRUZ,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____

January 12, 2000

Before FARRIS[1], WIENER, and STEWART, Circuit Judges.

JEROME FARRIS, Circuit Judge.

Luis Romero-Cruz appeals his jury conviction on two counts of transporting illegal aliens. On appeal, he challenges the sufficiency of the evidence and the denial of his pretrial motions to dismiss the indictment because the government improperly deported potential witnesses for the defense.

**BACKGROUND**

On August 1, 1998, INS agent Armando Farias observed a group of six persons milling about outside the Save-Inn motel in Harlingen, Texas, a location

_____

[1] Circuit Judge of the Ninth Circuit, sitting by designation.

known for alien smuggling. The persons appeared lost and were carrying their possessions in plastic bags. While Agent Farias was watching, Romero-Cruz drove up in pick up truck, parked and walked towards the motel. After a member of the group of suspected illegal aliens whistled to get Romero's attention, Romero got back into the truck and parked it near the fence where the suspected aliens were standing. After speaking with the group members, Romero motioned to the suspected aliens to get in the truck and lay down, which they did, and Romero closed the tailgate.

Eventually, a blue car drove up to where Romero was standing, and an individual later identified as l7-year-old Jay Cavazos got out. Cavazos climbed into the driver's side of the pick up truck and Romero got into the passenger side.

INS agents followed the truck for 60 miles before a marked border patrol unit pulled it over near San Manuel, Texas. Ten persons were discovered lying down in the bed of the truck and four others, including Cavazos and Luis Romero-Cruz were in the cab. Luis Romero-Cruz had been observed orchestrating the loading of the truck.

It was determined that all occupants of the pickup truck had entered the country illegally from Mexico except Cavazos, who was a United States citizen. Agent Farias testified that minors are often used to transfer illegal aliens because they are not prosecuted.

Romero stated that he was an illegal alien being transported and that Ariel Roman Medrano was responsible for harboring and transporting the truck full of

aliens. A Save-Inn motel employee testified that a man named Medrano was a regular customer at the motel.

The government deported all but two of the aliens besides Romero. Prior to her deportation, Martha Flores-Martinez was interviewed by immigration officials. She stated that an unknown woman transported her and her cousin, Dimitrio Delgado-Uriostegi, from the border to the Save-Inn motel.

The two witnesses who were not deported, Delgado and Gabriel Vidal-Gutierrez, were deposed before trial. Delgado stated that he met Romero in Mexico and Romero invited him to go to the United States with him. Delgado did not know whether he and Romero crossed the river at the same time because it was dark, but Delgado said Romero drove him from the border to the Save-Inn motel. Delgado claimed that he stayed at the motel for two days before Romero arrived with the truck and he climbed in. Vidal stated that he first met Romero at the Save-Inn motel in Harlingen, where Romero invited him to ride with him in the pickup truck. Both Delgado and Vidal stated that Romero did not charge them for their transportation.

Romero was indicted on two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and § 1324(a)(1)(A)(v)(II) for his involvement in transporting Delgado and Vidal from near Harlingen, Texas (Save-Inn motel) to near San Manuel, Texas (place of arrest). Prior to trial, Romero moved multiple times to dismiss the indictment on the grounds that the government violated his compulsory and due process rights by deporting the other ten potential witnesses without permitting Romero to interview them first. The district court denied all the motions

to dismiss, and the jury convicted Romero on both counts. Romero was sentenced to eighteen months' incarceration and three years' supervised release.

## DISCUSSION

### V. Compulsory and Due Process Rights.

Romero contends that the government violated his rights to compulsory and due process by deporting Flores-Martinez, who would have contradicted Delgado's testimony that Romero transported Delgado from the border to the Save-Inn motel, and by deporting the other aliens in the pickup truck, who unlike Delgado and Vidal, were unable to identify Romero as the person who transported them from the Save-Inn motel.

#### A. Standard of Review.

We review constitutional claims de novo. *See United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998), *cert. denied*, 120 S. Ct. 83 (1999).

#### B. Material and Favorable Showing.

The government is justified in promptly deporting alien witnesses after making a good faith determination that the witnesses possess no evidence favorable to the defendant in a criminal prosecution. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982).

To establish a violation of the Sixth Amendment right to compulsory process or the Fifth Amendment right to due process, a criminal defendant must make a "plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the

testimony of the available witnesses." *Id*. at 873. The government should be sanctioned for deporting alien witnesses "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id*. at 873-74.

Romero claims the testimony of Flores-Martinez and the other aliens was material and favorable because it would have established that Romero did not knowingly aid and abet the transport of aliens in furtherance of their illegal presence in the United States and because it would have impeached the testimony of Delgado and Vidal, the two witnesses who did testify via videotaped deposition.

### 1.     Testimony of Flores-Martinez

Flores-Martinez's statement that she and Delgado were transported from the border to the Save-Inn motel by an unknown woman contradicts Delgado's testimony that he was transported from the border by Romero. However, this portion of Delgado's testimony is not material to Romero's conviction for transporting Delgado and Vidal from near Harlingen to near San Manuel. Thus, Flores-Martinez would at most have impeached Delgado on a collateral matter. Romero has failed to establish a reasonable likelihood that Flores-Martinez's testimony would have affected the judgment of the jury. *See Valenzuela-Bernal*, 458 U.S. at 873-74.

### 2.     Testimony of Other Aliens

On cross-examination at trial, Agent Martinez acknowledged that only two of the twelve aliens identified Romero as the transporter, a fact emphasized in the

defense's closing argument and not challenged in the prosecution's closing argument. The testimony of these witnesses would thus have been cumulative of evidence presented at trial. Deportation of these witnesses therefore does not constitute a violation of Romero's compulsory or due process rights. *See id.* at 873.

## II. Sufficiency of the Evidence.

Romero argues alternatively that there was insufficient evidence to support a guilty verdict because (1) neither Delgado nor Vidal testified that Romero solicited payment from them or otherwise talked like a "coyote," and (2) the act of bringing a truck to the Save-Inn motel was equally consistent with Romero attempting to secure a ride for himself as with helping provide a ride for others.

### A. Standard of Review

In evaluating sufficiency of the evidence, we must determine "whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Williams*, 132 F.3d 1055, 1059 (5th Cir. 1998). If the evidence lends "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," the conviction must be reversed. *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (citations omitted).

### B. Elements of Crime

To prove a violation of 8 U.S.C. § 1324(a), the government must establish: "(1) that the defendant transported or moved an alien within the United States, (2) that the alien was present in violation of the law, (3) that the defendant was aware of

the alien's status, and (4) that the defendant acted wilfully in furtherance of the alien's violation of the law." *Williams*, 132 F.3d at 1059. Monetary gain by the defendant is not an element of the crime of illegally transporting aliens. *See id*.

To secure a conviction for aiding and abetting a crime under 18 U.S.C. § 2, the government must show: "(1) that the defendant associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed." *United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998). The defendant "associated" if he shared in the criminal intent of the principal, and the defendant "participated" if he engaged in affirmative conduct designed to aid the venture. *See id*.

## C.    Evidence Presented.

Delgado testified that he and Romero met in Mexico, that Romero invited him to come to the United States, and that the two traveled to the United States border together. This testimony provides sufficient evidence that Romero knew Delgado was in this country illegally. The suspicious transaction at the Save-Inn motel provides additional circumstantial evidence that Romero knew Delgado and Vidal were here illegally (e.g. the area was known for alien smuggling, and the people who entered the truck were clearly in transit and attempting to hide).

The INS agents testified that Romero drove an empty pickup truck to the Save-Inn motel, conversed with the group of aliens after they signaled to him, and directed them to lie down in the truck. The agents also testified that Romero

retained control of the truck until Cavazos arrived, went in and out of the motel repeatedly, and talked with someone in the blue car before climbing into the passenger cab of the truck. This testimony provides sufficient evidence that Romero engaged in affirmative conduct designed to aid in the venture of transporting the aliens further north.

Moreover, the fact that neither Delgado nor Vidal testified that Romero collected money from them is not determinative. Financial gain is not an element of the crime of illegal transport. The circumstances of the transaction are consistent with there being more than one smuggler (e.g. the aliens were at the motel for two days before Romero arrived, and the truck Romero provided did not belong to him).

## CONCLUSION

Romero failed to make a plausible showing that the deported witnesses would have provided testimony material and favorable to his defense, or that there was a reasonable likelihood the testimony could have affected the jury's verdict. Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Romero was guilty of the crime of illegally transporting aliens.

**AFFIRMED**.